**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X
SANDRA A. PEPPIATT,

                Plaintiff,           **MEMORANDUM OF**
                                     **DECISION & ORDER**
              -against-            2:17-cv-02444 (ADS)(AKT)

AETNA LIFE INSURANCE COMPANY, and
BANK OF AMERICA CORPORATION,

                Defendants.
-----------------------------------------------------------X

**APPEARANCES:**

**Axelrod LLP**
*Counsel for the Plaintiff*
830 Third Avenue, 5th Floor
New York, NY 10022
       By:    Robert J. Axelrod, Esq., Of Counsel

**DLA Piper LLP**
*Counsel for the Defendants*
1251 Avenue of the Americas
New York, NY 10020
       By:    Michael D. Hynes, Esq.,
                  Brian H. Benjet, Esq., Of Counsel

**SPATT, District Judge**:

       This is an Employee Retirement Income Security Act ("ERISA") action commenced by Sandra A. Peppiatt ("Peppiatt" or the "Plaintiff") against the Defendants, Aetna Life Insurance Company ("Aetna"), and Bank of America Corporation ("Bank of America") (collectively the "Defendants"). The complaint alleges that the Defendants refused to cover a trial implantation of a neurostimulator pulse generator to treat the Plaintiff's severe intractable supraorbital neuralgia.

The Plaintiff asserts that such actions violate ERISA § 502(a)(1)(B) and ERISA § 502(a)(3) seeking unpaid benefits and interest.

Presently before the Court are two motions by the Defendants, one to dismiss Counts II and IV of the Plaintiff's complaint, pursuant to Federal Rule of Civil Procedure ("FED. R. CIV. P." or "Rule") 12(b)(6), and a second for judgment on the pleadings, dismissing the complaint pursuant to Rule 12(c).

For the following reasons, the Court grants the Defendants' motion for judgment on the pleadings, dismissing the complaint pursuant to Rule 12(c) and denies the motion to dismiss Count II and IV of the Plaintiff's complaint, pursuant to Rule 12(b)(6) as moot.

## I. BACKGROUND

### A. THE FACTUAL BACKGROUND

The Plaintiff suffers from severe intractable supraorbital neuralgia, a condition that causes throbbing, paroxysmal, or constant pain that is present in the sub-occipital region as well as other parts of the posterior scalp. Complaint ¶ 1.

On December 5, 2011, the Plaintiff was unsuccessfully treated for the condition with Gamma Knife radiosurgery treatment, a procedure that focuses a high dose of radiation. *Id*. ¶ 17.

Approximately ten months later, on October 19, 2012, the Plaintiff underwent a rhizotomy, a surgical procedure which severed nerve roots in her spinal cord. *Id*. ¶ 18.

On December 2, 2013, Peppiatt underwent another rhizotomy as well as MVD or microvascular decompression. *Id*. ¶ 19.

After failing to respond to these procedures, the Plaintiff's neurological surgeon informed her of another treatment option, neuromodulation, which would require the insertion of trial and permanent peripheral nerve stimulating electrodes (the "Procedure"). *Id*. ¶ 20.

2

On February 1, 2016, Aetna, the insurance company that provided third-party administration services to Bank of America, the parent company of the Plaintiff's employer, responded to a letter from the Plaintiff's neurological surgeon informing the provider that the Procedure was not covered under the Plaintiff's insurance plan, a Bank of America Health & Insurance Group Benefits Program (the "Plan"). *Id*. ¶¶ 14-15, 21.

The Plaintiff's neurological surgeon sent a letter to Aetna on February 24, 2016 which objected to Aetna's denial of coverage and requested that the company reconsider its decision. *Id*. ¶ 23. The Plaintiff also sent Aetna a letter on March 1, 2016, stating in pertinent part, "I would like to appeal this decision." Declaration of Robert J. Axelrod in Support of Plaintiff's Opposition to Aetna Life Insurance Company and Bank of American Corporation's Joint Motion for Judgment on the Pleadings ("Axelrod Decl."), Exhibit 6.

On March 31, 2016, Aetna upheld its decision and refused to grant an appeal as to this "precertification request." Complaint ¶ 24; Axelrod Decl., Exhibit 3.

On April 13, 2016, Aetna again upheld its decision, stating in pertinent part:

> We were asked if a medical procedure or service would be covered by your insurance plan. With this review, your request has reached the final level of review available through us. A Medical Director who was not involved in previous determinations reviewed your request with all supporting documentation submitted. After review, it has been determined that the proposed service(s) would not be eligible … Because pre-service approval is not a requirement for coverage of this service under the member's plan, this is a courtesy evaluation of the proposed service(s). Therefore, there is no formal right to appeal this evaluation decision. … A final determination regarding coverage is not made until a claim for services is submitted. If a claim for services is submitted and denied, there will be an opportunity to appeal the claim denial determination at that time.

Complaint ¶ 25; Axelrod Decl., Exhibit 1.

On July 26, 2016, the Plaintiff requested an independent medical review. Complaint ¶ 26.

3

On August 4, 2016, Aetna sent a letter stating in pertinent part, "Please disregard our appeal decision letter dated March 31, 2016. The procedures under review do not require precertification … Because the procedures do not require precertification, they are not eligible for the appeal process, which means they are not eligible for external review." *Id*. ¶ 27; Axelrod Decl., Exhibit 4.

On August 8, 2016, Aetna sent another letter to the Plaintiff, stating in pertinent part, "We previously performed a full and final review of your predetermination request. After that review, we let you and your physician know that our determination was final. There will be no further internal reviews available for this predetermination request." Complaint ¶ 28.

The Plaintiff opted to surgically implant the trial trigeminal stimulating electrode on September 20, 2016. One week later, the Plaintiff had the trial electrode removed and the permanent peripheral nerve stimulating electrode and implantable pulse generator inserted. *Id*. ¶¶ 29-30. Peppiatt reported to her neurological surgeon in follow-up visits in 2016 and 2017 that subsequent to the Procedure, she was not experiencing pain. *Id*.

Aetna ultimately denied coverage of the procedure in a series of Explanations of Benefits ("EOBs"). The Plaintiff paid $117,351 out-of-pocket for the Procedure. *Id*. ¶ 58.

In the Plaintiff's complaint, she lists two EOBs, one from October 18, 2016 and one from December 13, 2016 in which Aetna denied Peppiatt's claims which were for the sum of $205,946.11. *Id*. The Defendants contend that Aetna sent the Plaintiff five EOBs denying the Plaintiff's claims for the Procedure, dated December 6, 2016, December 27, 2016, February 1, 2017, February 14, 2017 and February 15, 2017. Declaration of Shelly L. Bender in Support of Defendants' Motion for Judgment on the Pleadings ("Bender Decl."), Exhibit B.

According to the Bank of America Health & Insurance Summary Plan Description ("Plan Description"), the Plaintiff must appeal a denial of benefits after receiving services within 180 days after receiving the adverse determination. Bender Decl., Exhibit A at 220.

The Plan Description states, in pertinent part, "If you fail to file a request for review within the required time period, you're considered to have permanently waived and abandoned your claim and you may not refile it. … You can bring a civil action against a component plan for benefits, but only after you've exhausted your administrative review rights under that plan." *Id*. at 218-19.

On April 24, 2017, the Plaintiff initiated the instant action by filing the complaint.

## II. DISCUSSION

### A. STANDARD OF REVIEW: FED. R. CIV. P. 12(C)

The standard of review for a motion for a judgment on the pleadings pursuant to Rule 12(c) is the same as a motion to dismiss a complaint pursuant to Rule 12(b)(6). *Irish Lesbian & Gay Org. v. Giuliani*, 143 F.3d 638, 644 (2d Cir. 1998).

In considering a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the Plaintiff. *See, e.g.*, *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013); *Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006); *Bold Elec., Inc. v. City of New York*, 53 F.3d 465, 469 (2d Cir. 1995); *Reed v. Garden City Union Free Sch. Dist.*, 987 F. Supp. 2d 260, 263 (E.D.N.Y. 2013).

Under the *Twombly* standard, the Court may only dismiss a complaint if it does not contain enough allegations of fact to state a claim for relief that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007). The Second

5

Circuit has expounded that, after *Twombly,* the Court's inquiry under Rule 12(b)(6) is guided by two principles:

> First, although a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and [t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss and [d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.

*Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 664, 129 S. Ct. 1937, 1940, 173 L. Ed. 2d 868 (2009)).

A complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to survive a motion to dismiss. FED. R. CIV. P. 8(a)(2). Under Rule 8, a complaint is not required to allege "detailed factual allegations." *Kendall v. Caliber Home Loans, Inc.*, 198 F. Supp. 3d 168, 170 (E.D.N.Y. 2016) (quoting *Twombly*, 550 U.S. at 555). "In ruling on a motion pursuant to FED. R. CIV. P. 12(b)(6), the duty of a court 'is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'" *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 113 (2d Cir. 2010) (quoting *Cooper v. Parsky*, 140 F.3d 433, 440 (2d Cir. 1998)). The Court "[is] not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555.

"[F]ederal courts have complete discretion to determine whether or not to accept the submission of any material beyond the pleadings offered in conjunction with a Rule 12(b)(6) motion." *Giugliano v. F3² Capital Partners, LLC,* No. 14-cv-7240, 2015 WL 5124796 (E.D.N.Y. Sept. 1, 2015) (Spatt, J.) (citation and quotation marks omitted). In adjudicating this motion, the Court is permitted to consider:

> (1) facts alleged in the complaint and documents attached to it or incorporated in it by reference, (2) documents "integral" to the complaint and relied upon in it, even if not attached or incorporated by reference, (3) documents or information contained in [the] defendant's motion papers if plaintiff has knowledge or possession of the material and relied on it in framing the complaint, (4) public disclosure documents required by law to be, and that have been, filed with the Securities and Exchange Commission, and (5) facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence.

*Environmental Servs. v. Recycle Green Servs.*, 7 F. Supp. 3d 260, 270 (E.D.N.Y. 2014) (Spatt, J.) (emphasis added) (quoting *In re Merrill Lynch & Co.*, 273 F. Supp. 2d 351, 356-57 (S.D.N.Y. 2003), *aff'd in part and vacated in part on other grounds sub nom. Dabit v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 395 F.3d 25 (2d Cir. 2005), *vacated on other grounds*, 547 U.S. 71, 126 S. Ct. 1503, 164 L. Ed. 2d 179 (2006)); *accord Oberstein v. SunPower Corp.*, No. 07-cv-1155, 2010 WL 1705868, at *3 (E.D.N.Y. April 28, 2010); *Healthnow New York, Inc. v. Catholic Health Sys., Inc.*, No. 14-cv-986S, 2015 WL 5673123 (W.D.N.Y. Sept. 25, 2015). The Court notes that Aetna's administrative record and the Plan Description are well within this Court's discretion to consider for the purposes of deciding the instant motion.

**B. THE PLAINTIFF FAILED TO EXHAUST HER ADMINISTRATIVE REMEDIES**

The Defendants argue that the Plaintiff failed to exhaust the administrative remedies available under her plan and, as a result, her claims must be dismissed.

While ERISA does not contain an exhaustion requirement, *Kirkendall v. Halliburton, Inc.*, 707 F.3d 173, 179 (2d Cir. 2013), before a plaintiff may bring an action under ERISA, she must exhaust the administrative remedies detailed in her plan. *See Eastman Kodak Co. v. STWB, Inc.*, 452 F.3d 215, 219 (2d Cir. 2006) ("ERISA requires … that plan participants avail themselves of [claims] procedures before turning to litigation." (internal citations omitted)); *see also Heimeshoff v. Hartford Life & Acc. Ins. Co.*, – U.S. –, 134 S. Ct. 604, 610, 187 L. Ed. 2d 529 (2013) (noting

7

that Federal Courts "have uniformly required that participants [in ERISA plans] exhaust internal review before bringing a claim for judicial review"); *Burke v. PriceWaterHouseCoopers LLP Long Term Disability Plan*, 572 F.3d 76, 79 (2d Cir. 2009) (per curiam) ("[A]n ERISA action may not be brought in federal court until administrative remedies are exhausted."); *Chapman v. ChoiceCare Long Island Term Disability Plan*, 288 F.3d 506, 511 (2d Cir. 2002) ("We require exhaustion of benefit claims brought under ERISA[.]"). The purposes behind such a requirement are to:

> (1) uphold Congress' desire that ERISA trustees be responsible for their actions, not the federal courts; (2) provide a sufficiently clear record of administrative action if litigation should ensue; and (3) assure that any judicial review of fiduciary action (or inaction) is made under the arbitrary and capricious standard, not de novo.

*Kennedy v. Empire Blue Cross & Blue Shield*, 989 F.2d 588, 594 (2d Cir. 1993).

In the Second Circuit, "a failure to exhaust ERISA administrative remedies is not jurisdictional, but is an affirmative defense." *Paese v. Hartford Life & Accident Ins. Co.*, 449 F.3d 435, 446 (2d Cir. 2006); *accord Am. Med. Ass'n v. United HealthCare Corp.*, No. 00-cv-2800, 2007 WL 1771498, at *5 (S.D.N.Y. June 18, 2007) (stating that "[w]hile the ERISA exhaustion requirement is not jurisdictional, neither is it an insignificant procedural hurdle").

However, "courts routinely dismiss ERISA claims … on a 12(b)(6) motion to dismiss where the plaintiff fails to plausibly allege exhaustion of remedies." *Abe v. New York Univ.*, No. 14-civ.-9323, 2016 WL 1275661, at *5 (S.D.N.Y. Mar. 30, 2016) (collecting cases); *see also Zarringhalam v. United Food & Commercial Workers Int'l Union Local 1500*, 906 F. Supp. 2d 140, 152 (E.D.N.Y. 2012) ("A failure to exhaust administrative remedies provides grounds for dismissal or summary judgment in favor of the opposing party."); *Greifenberger v. Hartford Life Ins. Co.*, No. 03-cv-3238, 2003 WL 22990093, at *4 (S.D.N.Y. Dec. 18, 2003) ("[When a

8

claimant] fails to allege that he or she has exhausted administrative remedies, the claim must be dismissed."), *aff'd*, 131 Fed. Appx. 756, 758 (2d Cir. 2005). *See, e.g.*, *Star Multi Care Servs., Inc. v. Empire Blue Cross Blue Shield*, 6 F. Supp. 3d 275, 292 (E.D.N.Y. 2014); *Kesselman v. Rawlings Co., LLC*, 668 F. Supp. 2d 604, 608 (S.D.N.Y. 2009). In fact, this circuit has "recognized 'the firmly established federal policy favoring exhaustion of administrative remedies in ERISA cases.'" *Halo v. Yale Health Plan*, 819 F.3d 42, 55 (2d Cir. 2016) (quoting *Kennedy*, 989 F.2d at 594); *Leonelli v. Pennwalt Corp.*, 887 F.2d 1195, 1199 (2d Cir. 1989).

ERISA's regulatory framework establishes minimum requirements for plan procedures involving claims to ensure that reasonable procedures are established regarding notification, filing of claims, and the appeals process. *See* 29 C.F.R. § 2560.503-1(a)-b. Requiring exhaustion before resorting to a lawsuit in federal court affords a "safeguard that encourages employers and others to undertake the voluntary step of providing medical and retirement benefits to plan participants." *Halo*, 819 F.3d at 55 (internal citations omitted).

Here, the Plaintiff failed to follow the appeal requirements as detailed in the Plan Description, which is fatal to her claim. The Plan Description lays out the proper procedure to follow in the case of a denial of benefits. In the Plaintiff's case, she opted to have the Procedure on September 27, 2016 and October 7, 2016. Complaint ¶ 30. According to her complaint, she received two EOBs, one dated October 18, 2016, and another dated December 13, 2016, which denied her claims for $205,946.11. *Id*. ¶ 58. Pursuant to the Plan Description, the Plaintiff was required to file an appeal of the denial of benefits within 180 days of receiving the adverse decision. Bender Decl., Exhibit A at 220. Neither the complaint nor the record contain any allegation or support that an appeal of those EOBs were filed. This failure to adequately plead that the Plaintiff exhausted the administrative appeal process established by the Plan Description precludes this suit.

9

While Aetna has produced additional EOBs that purport to show the Defendants' denial of seven claims from December 6, 2016 to February 15, 2017, *see* Bender Decl., Exhibit B, there is nothing in the complaint or record that alleges that Peppiatt appealed the denial of these claims. Regardless, of whether the Court uses the EOBs mentioned in the complaint or the administrative record, the 180-day appeals period has long passed without action.

The Plaintiff's conclusory assertion in her complaint that she "has exhausted all her administrative remedies" does not save her claims. *See Papasan v. Allain*, 478 U.S. 265, 286, 106 S. Ct. 2932, 2944, 92 L. Ed. 2d 209 (1986) ("Although for the purposes of [a] motion to dismiss we must take all the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation."); *Iqbal*, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."); *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 398 (2d Cir. 2006) ("[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to defeat a motion to dismiss." (internal citations omitted)); *In re Am. Exp. Co. S'holder Litig.*, 39 F.3d 395, 400-01 n.3 (2d Cir. 1994) (2d Cir. 1994) ("[C]onclusory allegations of the legal status of a defendant's acts need not be accepted as true for purposes of ruling on a motion to dismiss.").

Further, the Plaintiff's conclusory pleadings and assertions in her briefing that she received a "final appellate decision, leading to exhaustion," are irrelevant as (1) the Plan's documentation specified the review process which could only be initiated after a claim was denied in EOBs; and (2) the communications received from Aetna informed the Plaintiff that her pre-service approval was a courtesy to the Plaintiff and in no way a final decision. Axelrod Decl., Exhibit 1.

In the instant case, the Court finds that the Plaintiff failed to allege that she had exhausted her appeal process under the Plan and as such, is barred from seeking relief from this Court.

## C. THE EXHAUSTION REQUIREMENT WAS NOT RENDERED FUTILE

The Plaintiff further argues that exhaustion was made futile by Aetna's prior representations to the Plaintiff and her physician. The Second Circuit does allow an ERISA claimant to be exempted from the exhaustion requirement when such a process would be "futile." *Kennedy*, 989 F.2d at 594.

However, such an exception to exhaustion is only applied "[w]here claimants make a *clear and positive showing* that pursuing administrative remedies would be futile." *Davenport v. Harry N. Abrams, Inc.*, 249 F.3d 130, 133 (2d Cir. 2001) (quoting *Kennedy*, 989 F.2d at 594) (emphasis in original). This requires an "unambiguous application for benefits and a formal or informal administrative decision denying benefits [so] it is clear that seeking further administrative review of the decision would be futile." *Id.* (internal citations omitted). *See also Barnett v. Int'l Bus. Machines Corp.*, 885 F. Supp. 581, 588 (S.D.N.Y. 1995).

In cases where courts have determined that exhaustion was futile, there is usually either an act of bad faith by a defendant, or an explicit and unequivocal statement made by a defendant informing the plaintiff that her denial of coverage is final. *See, e.g.*, *Paese*, 449 F.3d at 448-49 ("This argument finds considerable support in [the defendant]'s March 20 letter to [the plaintiff] containing its final decision, which, as quoted above, stated that [the defendant]'s 'claim decision is now final' and informed [plaintiff] that he had 'exhausted any administrative remedies available to [him] under the policy.'").

The Plaintiff's futility argument falls short of the clear and positive showing required for the exception to apply. Although the Plaintiff characterizes her initial correspondence with Aetna as an "appeal," such an argument is faulty as the Plaintiff failed to allege nor does the record reflect that she followed the appeals process set forth in the Plan Description. *See Egan v. Marsh &*

11

*McLennan Cos., Inc.*, No. 07-cv-7134, 2008 WL 245511, at *10 (S.D.N.Y. Jan. 30, 2008) ("Under Second Circuit case law, courts look to whether plaintiffs have utilized and exhausted administrative remedies provided for *under the plan* at issue, rather than pursuant to plaintiff's understanding of what may constitute the best method of addressing his claims." (emphasis in original)). The Defendants' provided the Plaintiff a clear appeals process, which required her to appeal Aetna's final determination of coverage after submitting a claim. Neglecting to follow this process dooms her futility argument.

Further, Peppiatt has failed to identify any document from Aetna in the course of their pre-Procedure correspondence that plausibly indicates that its pre-service approval decision was final nor does she claim any bad faith on the part of either of the Defendants. After a careful review of the record before the Court, there is nothing that the Court can reasonably construe as a signal that the pre-service approval decision was final. Although the Plaintiff argues that Aetna's correspondence stated that she was not entitled to benefits, *see* Axelrod Decl., Exhibit 4, this is far short of the clear and positive evidence required, as there was no representation by the Defendants that continuing to pursue her claims through the proper channels was hopeless, and the document specified that it was only in reference to "a predetermination [request] as a courtesy to you." *Id*.

Aetna made it clear to the Plaintiff that because "pre-service approval is not a requirement for coverage of this service under the member's plan, [it was] a courtesy evaluation of the proposed service(s). … A final determination regarding coverage is not made until a claim for services is submitted. *If a claim for services is submitted and denied, there will be an opportunity to appeal the claim dential determination at that time*." *Id*., Exhibit 1 (emphasis added). "The putative 'denial' of benefits contained in [the defendant's] letter to [plaintiff] did not render futile further pursuit of her claims through the proper channels." *Davenport*, 249 F.3d at 134 (internal citations

omitted). Further, as the record demonstrates, the appeal process of EOBs was not duplicative of the pre-service approval review process. Therefore, the Court cannot say that the appeals process was flawed in a manner that would render following the appropriate procedure under the Plan by appealing the EOBs as futile.

In light of the above, the Plaintiff falls far short of the heavy burden of stating a plausible claim that exhausting her administrative remedies would be futile.

### III.  CONCLUSION

For the reasons stated above, the Defendants' motion for judgment on the pleadings, dismissing the complaint pursuant to Rule 12(c), is granted, as the Plaintiff has failed to exhaust her administrative remedies. The Clerk of the Court is directed to close this case. Further, the Defendants' Motion to Dismiss, ECF No. 10, is denied as moot.

It is **SO ORDERED**:

Dated: Central Islip, New York

December 4, 2017

　　　　　　　　　　　　　　　　　　　　__/s/ Arthur D. Spatt__

　　　　　　　　　　　　　　　　　　　　ARTHUR D. SPATT

　　　　　　　　　　　　　　　　　　　　United States District Judge